IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER K. SPATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-3150-cv-S-MDH-P |
| | ) | |
| ROBERT TURNER, CHARLES REESE, and JOHN MACHINO, in their individual capacity, | ) ) ) | Demand for Jury Trial |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Christopher K. Spates, by and through his counsel Husch Blackwell LLP, states as follows for his Second Amended Complaint:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a United States citizen and a resident of the State of Missouri.

2. During the time relevant to this action, Plaintiff was incarcerated at the South Central Correctional Center ("SCCC"), 255 W. Hwy 32, Licking, Texas County, Missouri 65542.

3. During the time relevant to this action, Defendant Robert Turner worked as a Correctional Officer at the SCCC; he is sued in his individual capacity only.

4. During the time relevant to this action, Defendant Charles Reese worked as a Correctional Officer at the SCCC; he is sued in his individual capacity only.

5. During the time relevant to this action, Defendant John Machino worked as a Correctional Officer at the SCCC; he is sued in his individual capacity only.

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States, under 42 U.S.C. § 1983, and under 28 U.S.C. § l343(a)(3).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the events giving rise to this action occurred at the SCCC in Texas County, Missouri.

8. Venue is proper in the Southern Division under Local Rule 3.2(a)(3) because the actions at issue occurred at the SCCC in Licking, Texas County, Missouri, which is within the venue of the Southern Division.

**FACTS**

9. On or about November 12, 2015, Plaintiff was involved in an altercation with Offender Julius Smith on the main walkway of the general population yard of the SCCC.

10. It was well documented and otherwise well-known with the administration and staff that "bad blood" existed between Plaintiff and Offender Smith and Offender Smith's associates requiring the need for security purposes for Offender Smith and Plaintiff to be at separate camps. Upon information and belief, shortly after the incident at issue, Offender Smith was moved to a separate camp even though he should have been moved to a separate camp prior to the incident, consistent with DOC policies, procedure and customs.

11. Upon information and belief, Plaintiff and Offender Smith were escorted to the Administrative Segregation Unit pursuant to 1521-1.1, §III, A(S), which states "an urgent need to separate offenders for their safety or that of others."

12. Plaintiff was assigned to cell #206 and spent approx. the next three hours in that cell alone.

13. Shortly thereafter, Defendants Reese, Turner and Machino were in front of Plaintiff's cell with Offender Smith who was in handcuffs.

14. Defendant Reese gave Plaintiff a directive to "cuff-up" or submit to wrist restraints.

15. Plaintiff immediately informed Defendant Reese that Plaintiff and Offender Smith had just gotten into a fight on the yard and that Offender Smith was a known enemy of Plaintiff.

16. Offender Smith at this time also informed Defendant Reese of the same facts and stated his refusal to come into the cell.

17. Defendant Turner then stated, "the hell if he isn't coming in there, oh he is coming in there."

18. Offender Smith then stated, "I'm good, take me to another cell."

19. Defendant Reese then replied, "no, you're carrying your ass where I tell you. I missed the first fight but now it's time for some 'black gladiator combat.'"

20. Defendant Turner then ordered Plaintiff to 'cuff-up' again or he would be maced.

21. Plaintiff, under duress, complied with Defendant Turner's directive out of fear of being maced.

22. At no time did any Defendant or anyone else present Plaintiff or Offender Smith with an enemy waiver form for completion prior to Plaintiff and Offender Smith being placed in a cell together, with Defendants' actions in clear contravention of DOC policies, procedure, and customs.

23. Defendants placed Plaintiff and Offender Smith in a cell together despite both Plaintiff and Offender Smith (and surrounding inmates) informing Defendants that Plaintiff and

4843-2906-0065

Case 6:18-cv-03150-MDH    Document 178-1    Filed 08/15/23    Page 3 of 10

Case No. 18-3150-cv-S-MDH-P

Offender Smith should not be placed in a cell together, with Defendants' actions in clear contravention of DOC policies, procedure, and customs.

24. The cell was accessed, Offender Smith entered the cell, and then the Defendants secured the cell door while shaking up their cannisters of mace in a threatening manner.

25. Plaintiff and Offender Smith rushed to the opening in the cell door to have their handcuffs removed.

26. Offender Smith's handcuffs were removed first, and he immediately started attacking Plaintiff.

27. Plaintiff had no way of protecting himself as Offender Smith struck him repeatedly in the face and head while Plaintiff was still in handcuffs.

28. Offender Smith kicked Plaintiff in the upper regions of the head, neck and back.

29. While Plaintiff was being brutally assaulted by Offender Smith, Defendants looked on and did nothing to stop it.

30. Plaintiff pleaded with Defendants to open the door and get Offender Smith off of him. These pleas went ignored.

31. During the entire assault, Plaintiff was maced by Defendants, the very officers whose duty it was to keep him safe.

32. As a result of this unwarranted and preventable attack Plaintiff suffered injuries to his head, neck, back and wrists from being restricted in the handcuffs during the attack.

33. Upon information and belief, Plaintiff filled out an MSR to request to be seen by medical staff but was not seen until after he was out of administrative segregation contrary to DOC policies, procedure and customs.

34. On or about November 17, 2015, Plaintiff filed an Informal Resolution Request (I.R.R.) claiming DOC employees failed to protect him and others by their failure to follow established Safety and Security policy and procedures.

35. On or about December 17, 2015, Plaintiff received a response which stated, "I find that an investigation is in process. Investigations are confidential and you will not be given the outcome of the investigation. This should satisfy your complaint."

36. On or about January l2, 2016, Plaintiff filed his offender grievance and reiterated the same claims and requested monetary compensation.

37. On or about February 8, 2016, the superintendent responded by saying, "I find your allegations were submitted for investigation and the investigation was completed. You will not be afforded the results. Therefore, your grievance is denied."

38. On or about February 15, 2016, Plaintiff filed his grievance appeal.

39. On or about March 14, 2016, Deputy Division Director Alan Earle acknowledged in his response that "An error occurred on the part of a staff member which has been addressed by administrative staff. However, you will not be privy to the outcome. Also, new procedures have been put in place to ensure a similar situation does not occur in the future. This should resolve your complaint."

40. Upon information and belief, the Missouri Department of Corrections Institutional Services Policy and Procedural Manual IS20-1, Custody, Security and Control outlines policies applicable to DOC facilities and employees.

41. Upon information and belief, the Missouri Department of Corrections Department Manual D2-11, Employee Standards outlines standards all employees of the Department of Corrections are expected to maintain.

42. Upon information and belief, the Missouri Department of Corrections Department Procedure Manual D2-11.10, Staff Member Conduct provides staff members with a guideline of professionalism and appropriate conduct.

43. Defendants have ignored their responsibilities under the above stated Procedural Manuals and other DOC policies, procedure and customs. No DOC policies, procedure or customs provide Defendants with authority to create and instigate safety and security concerns for those who reside within DOC facilities such as the SCCC.

44. Upon information and belief, all offenders assigned to administrative segregation in a two-man cell requires a file review and/or computer check for enemies prior to cell assignment. Defendants failed to follow DOC policies, procedure and customs in this case and instead knowingly placed known enemies in a cell together with deliberate indifference to the harm that might ensue, resulting in Plaintiff's injuries. Had Defendants followed DOC policies, procedure and custom, Plaintiff and Offender Smith would not have been placed in a cell together and Plaintiff would not have been assaulted from being placed in a cell with uncuffed Offender Smith.

45. Upon information and belief, all offenders must sign a known enemy waiver immediately before being placed in a two-man cell together. Defendants failed to follow DOC policies, procedure and customs in this case, resulting in Plaintiff's injuries. Had Defendants followed DOC procedure, Plaintiff and Offender Smith would not have been placed in a cell together and Plaintiff would not have been assaulted from being placed in a cell with uncuffed Offender Smith.

## COUNT I
**Plaintiff Was Denied Protection From Personal Abuse, Deliberate Indifference and Unsafe Conditions Which Violated Christopher K. Spates' Rights Under the United States Constitution**

46. Plaintiff incorporates paragraphs l through 45 as though fully stated herein.

47. Offender Julius Smith assaulted Plaintiff.

48. Defendants further assaulted Plaintiff by spraying him with mace.

49. Defendants failed to provide Plaintiff with medical treatment after the assaults.

50. Because of Defendants' failure to follow DOC policies, procedure, and customs related to housing individuals in a cell together, Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.

51. Defendants knew of and were aware of the substantial risk of an attack to Plaintiff and/or disregarded the risk to Plaintiff's safety.

52. Defendants, with deliberate indifference to Plaintiff's need to be protected from attack by Offender Smith, failed to protect Plaintiff.

53. Defendants, with deliberate indifference to Plaintiff's need for medical treatment related to the assault, failed to provide Plaintiff with medical care.

54. Defendants assaulted Plaintiff by spraying him with mace and the force used was not reasonably necessary to restore order as Plaintiff was handcuffed at the time of the incident and engaging in no wrongdoing.

55. As a direct result of Defendants' actions, Plaintiff was injured.

56. At all relevant times, Defendants, Correctional Officers of the Missouri Department of Corrections at the SCCC, subjected Plaintiff to conduct that occurred under color of state law.

Page **7** of **10**
4843-2906-0065
Case No. 18-3150-cv-S-MDH-P
Case 6:18-cv-03150-MDH    Document 178-1    Filed 08/15/23    Page 7 of 10

57. Defendants' conduct deprived Plaintiff of rights, privileges, and immunities guaranteed under federal law and the United States Constitution.

58. Defendants knew or should have known that Defendants' actions, including violation of the established DOC policies, procedure and customs as detailed above, would proximately cause harm or damage to Plaintiff.

59. The actions of Defendants were deliberately indifferent to the rights of Plaintiff.

WHEREFORE, Plaintiff requests judgment to be entered in his favor against Defendants for Plaintiff's actual and compensatory damages in an amount fair and reasonable and not less than $75,000.00 from each Defendant; for punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct; for nominal damages; for Plaintiff's reasonable attorney's fees and costs and expenses pursuant to 42 U.S.C. § 1988; for the enforcement of § 36.460 RSMo.; and for such relief as the Court deems just.

## COUNT II
## 42 U.S.C. § 1983

60. Plaintiff incorporates paragraphs l through 59 as though they fully stated herein.

61. Offender Julius Smith assaulted Plaintiff.

62. Defendants further assaulted Plaintiff by spraying him with mace.

63. Defendants failed to provide Plaintiff with medical treatment after the assaults.

64. Because of Defendants' failure to follow DOC policies, procedure, and customs related to housing individuals in a cell together, Plaintiff was incarcerated under conditions posing a substantial risk of serious harm.

65. Defendants knew of and were of aware of the substantial risk of an attack to Plaintiff and/or disregarded the risk to Plaintiff's safety.

66. Defendants, with deliberate indifference to Plaintiff's need to be protected from attack by Offender Smith, failed to protect Plaintiff.

67. Defendants, with deliberate indifference to Plaintiff's need for medical treatment related to the assault, failed to provide Plaintiff with medical care.

68. Defendants assaulted Plaintiff by spraying him with mace and the force used was not reasonably necessary to restore order as Plaintiff was handcuffed at the time of the incident and engaging in no wrongdoing.

69. As a direct result of Defendants' actions, Plaintiff was injured.

70. At all relevant times, Defendants, Correctional Officers of the Missouri Department of Corrections at the SCCC, subjected Plaintiff to conduct that occurred under color of state law.

71. Defendants' conduct deprived Plaintiff of rights, privileges, and immunities guaranteed under federal law and the United States Constitution.

72. Defendants knew or should have known that Defendants' actions, including violation of the established DOC policies, procedure and customs as detailed above, would proximately cause harm or damage to Plaintiff.

73. The actions of Defendants were deliberately indifferent to the rights of Plaintiff.

WHEREFORE, Plaintiff requests judgment to be entered in his favor against Defendants for Plaintiff's actual and compensatory damages in an amount fair and reasonable and not less than $75,000.00 from each Defendant; for punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct; for nominal damages; for Plaintiff's reasonable attorney's fees and costs and expenses pursuant to 42 U.S.C. § 1988; for the enforcement of § 36.460 RSMo.; and for such relief as the Court deems just.

Respectfully submitted,

HUSCH BLACKWELL LLP


By: /s/ *Ginger Gooch*
Ginger K. Gooch, #50302
901 St. Louis St., Suite 1800
Springfield, MO 65806
Phone: 417.268.4000
Fax: 417.268.4040
Ginger.Gooch@huschblackwell.com

Tierra S. Jones, #70156
750 17th Street, NW, Suite 900
Washington, D.C. 20006-4675
Phone: 202.378.2392
Fax: 202.378.2319
Tierra.Jones@huschblackwell.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 13th day of April, 2021, via the court's electronic filing system, to:

Matthew W. Vineyard
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102
Matthew.Vineyard@ago.mo.gov

        */s/ Ginger Gooch*
        Ginger Gooch